IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TYRONE WEST, #293022 | * | |
| Petitioner, | | |
| v. | * | CIVIL ACTION NO. RDB-04-223 |
| J. MICHAEL STOUFFER, | * | |
| WARDEN, et al. | | |
| Respondents. | * | |

******

**MEMORANDUM OPINION**

Now pending before the Court is Tyrone West's 28 U.S.C. § 2254 Petition for writ of habeas corpus attacking his March 3, 2000, convictions in the Circuit Court for Baltimore City on counts of second degree assault, reckless endangerment, use of a handgun in the commission of a felony or crime of violence, unlawful transportation of a handgun, two counts of resisting arrest, and one count of possession of a firearm after being convicted of a felony[1] (Paper No. 1); Respondents' Answer thereto (Paper No. 14); and Petitioner's Reply (Paper No. 15).[2]   After review, the Court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. § 2254(d) & (e)(2).  For  reasons which follow, the Petition is hereby denied and dismissed with prejudice.

---

[1]   *See State v. West*, Case No. 198166017-19.

[2]   This Petition was filed together with another 28 U.S.C. § 2254 cause of action which attacked Petitioner's March 27, 2000, drug convictions.  Both matters were instituted under one case number.  The cases were subsequently bifurcated.  All papers relevant to the March 3, 2000, convictions were placed in the court file in this case.  The March 27, 2000, convictions were the subject of *West v. Stouffer*, *et al.*, Civil Action No. RDB-03-2899.

**I. Procedural History**

On June 15, 1998, Petitioner was charged by criminal indictment in the Circuit Court for Baltimore City with attempted first degree murder, attempted second degree murder, attempted voluntary manslaughter, first degree assault, second degree assault, reckless endangerment, several handgun and weapons offenses, two counts of second degree assault on a police officer, and resisting arrest. (Paper No. 14, Exs. 1-3; Ex. 8 at 1-2).

The facts adduced at trial, as described by the Maryland Court of Special Appeals on direct appeal, were as follows:

> On May 14, 1998, the Baltimore City Police responded to a shooting at 2400 Barclay Street. There, the police found Shawn Allen suffering from a gunshot wound to his left lower leg. Officer Brietenback interviewed Rhonda Hillmon, a witness to the shooting, about the incident. Rhonda Hillmon provided a description of the shooter and the car the shooter was driving, which the police broadcast city wide. Sergeant Platt, working in a covert vehicle, saw West driving a car matching that description. West pulled into a gas station on Park Heights Avenue, and Sgt. Platt called for assistance. Officers Hameier and Stiemly arrived shortly thereafter. Officer Hameier approached West, who was filling his car with gas. West pushed Officer Hameier and fled the gas station. The two officers chased and apprehended him, but he managed to free himself from the two officers, only to be apprehended a second time.
>
> The shooting victim, Allen, identified West as his assailant, although at trial he testified that he did not see the shooter, nor the gun, nor the car from which shots were fired. Allen stated that he made the photographic identification of West and implicated West in a tape-recorded statement because the police coerced him to do so. West, himself, provided police with a tape-recorded statement, claiming that Allen approached his car carrying a gun. The two men struggled and the gun discharged.

2

      Detective Copeland returned to interview Rhonda Hillmon, but also spoke with her sister, Yolanda Hillmon ("Yolanda").  Detective Copeland stated that, although Yolanda witnessed the shooting, he did not include that information within his report.

(*Id*., Ex. 10 at 1-2).

      On March 3, 2000, following a five-day trial before Circuit Judge Paul A. Smith, the jury convicted Petitioner of second degree assault of Shawn Allen, reckless endangerment, use of a handgun in the commission of a felony or crime of violence, unlawful transportation of a handgun, and two counts of resisting arrest.   (Paper No. 14, Ex. 6 at 50-54).  The jury acquitted Petitioner of attempted murder and attempted voluntary manslaughter of Shawn Allen and of assaulting Officers Hameier and Stiemly.  (*Id*.)  Judge Smith, having been asked to resolve a charge of firearm possession by a felon, found Petitioner guilty of that charge.  (*Id*., Ex. 2 at 4-5; Ex. 6 at 57-58).

      On April 15, 2000, Judge Smith sentenced Petitioner to: ten years on the second degree assault offense; five years without parole on the use of a handgun conviction, concurrent to the ten-year term; five years concurrent on the felon in possession of a handgun offense; and two years on each count of resisting arrest, to run concurrently with each other but consecutively to the five-year non-parolable term.[3]  (*Id*., Ex. 7 at 23-24).   A cumulative seventeen-year sentence was imposed.

      On appeal to the Court of Special Appeals,  Petitioner raised three issues for review:

    I.    Did the court err in refusing to grant Petitioner's motion for mistrial on the basis of the State's discovery violation?

    II.    Did the court abuse its discretion in refusing to allow the defense to impeach Yolanda Hillmon with charges that were subsequently nol prossed? and

    III.    Was the evidence sufficient to sustain Petitioner's conviction?

---

[3]    The reckless endangerment and transportation of handgun convictions were merged.  Paper No. 14, Ex. 7 at 20-21.

(*Id*., Exs. 8 & 9).

In an unreported opinion dated August 10, 2001, the Court of Special Appeals of Maryland affirmed the criminal judgments. (Paper No. 14, Ex. 10). Petitioner did not file a petition for writ of certiorari in the Court of Appeals of Maryland.

On June 12, 2002, Petitioner filed for post-conviction review in the Circuit Court for Baltimore City. (*Id*., Ex. 1; Exs. 11 & 12). He raised the following grounds for review:

- A. The trial court improperly allowed the State to admit into evidence Officer Brietenback's hearsay statement regarding the identification comments of witness Rhonda Hillmon;

- B. Petitioner was denied his right of confrontation;

- C. The State willfully misrepresented its intentions to call Rhonda Hillmon as a witness and instead "substituted" her sister, Yolanda Hillmon, as a witness;

- D. The out-of-court identification process conducted by Detective Copeland was impermissibly suggestive; and

- E. Defense counsel provided ineffective assistance.[4]

(*Id*., Ex. 11).

On November 13, 2002, Petitioner appeared before Circuit Court Judge Joseph H.H. Kaplan for purposes of a post-conviction hearing.[5] (*Id*., Ex. 13). Appearing pro se, he orally raised arguments

---

[4] In his original post-conviction application Petitioner claimed that Mr. Rosenberg failed to timely object to Yolanda Hillmon's testimony and her name being mentioned during voir dire. Paper No. 14, Ex. 11 at 5-6. In his Addendum, Petitioner elaborated on all prior claims and set out new claims by way of some 42 independent statements. *Id*., Ex. 12.

[5] The post-conviction court heard two petitions for collateral review. Paper No. 14, Ex. 13. One post-conviction petition pertained to the second degree assault, reckless endangerment, handgun violations, and resisting arrest convictions at issue here, while the other post-conviction petition related to Petitioner's drug convictions, which were at issue in *West v. Stouffer*, Civil Action No. RDB-03-2899. *Id*.

regarding: (i) the decision to deny a mistrial based upon the "substantial" discovery violation regarding the testimony of witness Yolanda Hillmon; (ii) the suggestive identification process used by Detective Copeland; (iii) the effectiveness of defense counsel;[6] (iv) the misconduct of the prosecutor for misleading the jury that Rhonda Hillmon was going to testify; and (v) the State's failure to secure the evidence, given the failure to take fingerprints off the gun and to keep the gun, clips, and shell casings from being destroyed. (Paper No. 14, Ex. 13 at 8-14). Petitioner was subsequently allowed to read into the record, directly from his amended post-conviction petition, the claims to be presented to the court. (*Id*., Ex. 13 at 14-22). The reading was stopped by Judge Kaplan and Petitioner advised that he wished the post-conviction court to consider "all those points" raised in the petition. (*Id*., Ex. 13 at 23).

On November 18, 2002, Judge Kaplan denied post-conviction relief, finding that the issues were either finally litigated on direct appeal, waived, or failed to comprise a Sixth Amendment violation. (*Id*., Exs. 14 & 15). Petitioner filed an application for leave to appeal in the Court of Special Appeals, solely presenting the following three issues:

1. The post-conviction court erred when it found no Sixth Amendment ineffective assistance violation without ensuring the attendance of Petitioner's trial attorney;

2. The post-conviction court erred when it allowed Petitioner to "go through his post-conviction without counsel;" and

3. Post-conviction counsel was ineffective because Petitioner "is not an attorney and he does not know how to represent himself."

(*Id*., Ex. 16).

---

[6] Petitioner argued that Mr. Rosenberg was ineffective because he: (i) failed to state with particular reasons why he wanted a motion for acquittal; (ii) did not raise a timely objection to the calling of Yolanda Hillmon as a witness; and (iii) admitted several times in the trial transcript that he mistakenly believed that Rhonda Hillmon, not Yolanda Hillmon, was testifying. Paper No. 14, Ex. 13.

On July 9, 2003, the Court of Special Appeals summarily denied the application for leave to appeal. (Paper No. 14, Ex. 17). The appellate mandate was issued on August 8, 2003. (*Id.*).

In filing this § 2254 attack on his March 3, 2000 convictions, Petitioner asserts that defense counsel Lawrence Rosenberg's performance was deficient and prejudiced the defense when counsel:

1. Failed to object to the prosecutor's opening statement regarding detailed identification evidence provided by witnesses to the police;

2. Failed to object to the form of witness Yolanda Hillmon's in-court identification of Petitioner;

3. Did not ask witness Yolanda Hillmon if the police or the alleged victim Shawn Allen had transported her to court to testify;

4. Did not attack the credibility and reliability of Yolanda Hillmon's testimony regarding her contact with Officer Hameier due to counsel's inattentiveness and lack of preparation;

5. Failed to note and timely object to the fact that Yolanda Hillmon, not Rhonda Hillmon, was called as a witness;

6. Failed to state the grounds in support of Petitioner's motion for judgment of acquittal;

7. Did not interview Tyrone Armstead, a witness who had reported hearing a sequence of gunfire;

8. Failed to adequately challenge the report of Officer Todd Nock[7];

9. Did not challenge the prosecutor's statements regarding Yolanda Hillmon and her participation in the witness protection program;

10. Failed to move to have Rhonda Hillmon produced as a witness or move for a mistrial when the State indicated that Rhonda Hillmon was unavailable to testify;

11. Did not take steps to ensure that certain evidence was available at trial; and

---

[7] Petitioner claimed that: (i) during the course of Officer Michelle Brietenback's testimony, counsel should have been prepared to bring out the fact that Officer Nock directed Brietenback to Rhonda Hillmon as a witness; (ii) Nock's report was altered and contained different handwriting; and (iii) counsel should have called Nock to testify. Paper No. 1, Addendum at 19.

    12.    Failed to ensure that Petitioner was properly sentenced under Maryland Rules with regard to the non-parolable sentence for his handgun offense.

(Paper No 1. at 6 & Addendum at 5, 10-14, 18-20, & 22-23).

Petitioner further claims that counsel's ineffectiveness abridged his right of confrontation and that the cumulative effect of counsel's errors constituted ineffective assistance.[8]  (*Id*., Addendum at 21 & 23).

## II. Threshold Considerations

### A. Exhaustion of State Remedies

Under *Rose v. Lundy*, 455 U.S. 509 (1982), before a petitioner may seek habeas relief in federal court, he is required to exhaust each claim presented to the federal court by pursuing all available remedies available in state court.   This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(b) and (c).  In Maryland, this may be accomplished by proceeding with certain claims on direct appeal to the Court of Special Appeals (and thereafter seeking *certiorari* to the Court of Appeals) and with other claims by way of a post-conviction petition, followed by seeking leave to appeal from the Court of Special Appeals.  Petitioner no longer has direct appeal or post-conviction remedies available in connection with the claims raised before this Court.

### B. Statute of Limitations

There is no contention that the Petition is time-barred pursuant to 28 U.S.C. §2244(d).

---

[8]  In addition to the Addendum, the § 2254 Petition is accompanied by several exhibits, comprised primarily of trial transcript abstracts and police incident reports. Approximately 21 pages of those materials, however, relate to Petitioner's drug convictions in *State v. West*, Case No. 198268021, which were the subject of a separate federal habeas corpus challenge in *West v. Stouffer*, *et al.*, Civil Action No. RDB-03-2899.

7

**C. Procedural Default**

Respondents assert that Petitioner is procedurally defaulted from raising Sixth Amendment claims against attorney Lawrence Rosenberg because the ineffective assistance claims he now presents were not first presented to the Court of Special Appeals of Maryland when Petitioner sought leave to appeal Judge Kaplan's decision to deny post-conviction relief.

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *See Picard v. Connor*, 404 U.S. 270, 276 (1971). In *Wainwright v. Sykes*, 433 U.S. 72, 85 (1977), the Supreme Court held that consideration of a claim in a petition for habeas corpus can be barred by failure to comply with state procedural rules, unless petitioner makes a showing of cause for the failure and prejudice resulting from the failure. Thus, claims which have never been presented in the state courts--or claims which were not exhausted properly in the state courts--are procedurally defaulted if presentation of the claims in state court would be barred by state procedural rules. *See Collier v. Jones*, 910 F.2d 770, 773 (11th Cir. 1990).

The Court agrees with Respondents. The Sixth Amendment grounds raised here were not presented in Petitioner's application for leave to appeal and are therefore procedurally defaulted. Even where a claim has been procedurally defaulted, however, this Court must still consider whether it should reach the merits of the defaulted claim in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 318-20 (1995). The miscarriage of justice standard is directly linked to innocence. *Id*. at 320. Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id*. at 314. The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has

probably resulted in the conviction of one who is actually innocent." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup*, *supra*. To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 327.

> *Schlup* observes that:
>
> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare....To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id*. at 323.

Petitioner has been afforded an opportunity to demonstrate the existence of cause for his failure to raise his claims in the state courts properly and prejudice resulting from this failure. He has failed to make the requisite showing. Petitioner has presented no evidence, nor suggested that any exists, which could satisfy the difficult standard set forth in *Schlup*. Petitioner's procedurally defaulted claims are, therefore, foreclosed from federal habeas review.

Even if these ineffective assistance claims were not procedurally defaulted, however, they would afford Petitioner no relief. To establish a claim of ineffective assistance of counsel, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 481-82 (2000). With regard to the first prong of this test, this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time

9

of counsel's conduct." *Strickland*, 466 U.S. at 690. All circumstances are to be considered, and this Court's scrutiny of counsel's conduct must be "highly deferential." *Id*. at 688-89. Even if counsel committed a professionally unreasonable error, relief can be granted only if "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Petitioner raises more than a dozen ineffective assistance claims against Mr. Rosenberg, mostly related to counsel's alleged failure to adequately and timely object to and challenge the appearance and testimony of witness Yolanda Hillmon. In his post-conviction decision, Judge Kaplan, in reliance on the *Strickland* standard, made the following determination:

> Petitioner's third allegation of error involves ineffective assistance of counsel, specifically Counsel's failure to raise certain issues and to object timely.
>
> Applying the above-stated principles to the facts of the case *sub judice*, the Court finds that none of the alleged acts or omissions of trial counsel, individually or cumulatively, prejudiced Petitioner. In addition, the second prong of the *Strickland* test is not met either. According to the second prong, Petitioner must show the deficiency in counsel's performance has resulted in prejudice to him. *Strickland* at 694. Petitioner has not shown such deficiency. Therefore, Petitioner was not denied effective assistance of counsel.

(Paper No. 14, Ex. 15).

The Court has fully examined the Court of Special Appeals' decision on direct appeal, the trial, sentencing, and post-conviction transcripts, and Judge Kaplan's post-conviction decision. When reviewing the trial transcripts, the undersigned has focused on: counsel's opening arguments; the testimony of Yolanda Hillmon, Shawn Allen, Firearms Examiner Mark Tackas, Criminalist II Joseph Harrant, Detective Copeland, and Officers Michelle [Cazy] Brietenback, Kurt Hameier, George Stiemly, John Platt, and Lamar Howard; trial court motions, objections, arguments, and rulings with regard to the testimony of

Yolanda Hillmon; and the evidence admitted into the record. After due consideration, the Court concludes that Petitioner has failed to demonstrate that attorney Rosenberg's performance was constitutionally deficient or otherwise prejudiced his case.

### III. Conclusion

For the aforementioned reasons, the Court concludes that Petitioner's Sixth Amendment grounds are procedurally defaulted or, in the alternative, that Petitioner has failed to establish that counsel's performance was deficient and prejudiced his case. The instant Petition for habeas corpus relief shall be denied and the case shall be dismissed with prejudice. A separate Order follows.

Date: July 7, 2005             /s/_____
                               RICHARD D. BENNETT
                               UNITED STATES DISTRICT JUDGE